UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE STEVENS,

        Plaintiff,

v.                                Case No.  8:16-cv-3183-T-27AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

    Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

**A.**     **Procedural Background**

    Plaintiff protectively filed an application for SSI (Tr. 211-19). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 142-49). Plaintiff then requested an administrative hearing (*see* Tr. 153-63). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 40-76). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 21-39). Subsequently, Plaintiff requested review from the Appeals

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Council, which the Appeals Council denied (Tr. 1-7, 16-18).   Plaintiff then timely filed a complaint with this Court (Doc. 1).   The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1969, claimed disability beginning June 1, 2012, but later amended the alleged onset date to November 25, 2013 (Tr. 211, 282).   Plaintiff has less than a high school education (Tr. 50, 250).   Plaintiff's past relevant work experience included work as a waitress (Tr. 32, 73).   Plaintiff alleged disability due to atrial fibrillation, severe scoliosis, firbromyalgia, osteoarthritis, and carpal tunnel syndrome (Tr. 249).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity ("SGA") since October 10, 2013, the application date, and noted that, though Plaintiff worked after the application date, the work activity did not rise to the level of SGA (Tr. 26).   After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the thoracic and lumbar spine; cardiac dysrhythmia; fibromyalgia; and status post right knee arthroscopy (Tr. 27).   Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28).   The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a range of sedentary work, except that she could lift and carry 20 pounds occasionally and 10 pounds frequently; could not climb ladders or scaffolds; occasionally could climb ramps and stairs; frequently could balance; occasionally could stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, unprotected heights, and moving mechanical parts; and could not operate motorized equipment as part of the job

(Tr. 29). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible (Tr. 30).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 32). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a packager, assembler, and order clerk (Tr. 33, 74). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 34).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in

sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether

the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002)(*per curiam*).

**III.**

Plaintiff argues here that the ALJ erred by (1) failing to determine that Plaintiff's scoliosis constituted a severe impairment; (2) failing to properly consider Plaintiff's subjective complaints regarding her cardiac symptoms; (3) failing to assess the weight afforded to the opinion of Dr. Jagan Akella; and (4) affording improper weight to the opinion of Dr. Donald Morford, a state agency medical consultant.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A.       Severe Impairment**

Plaintiff first contends that the ALJ erred by failing to determine the Plaintiff's scoliosis constituted a severe impairment.  Since the ALJ concluded that Plaintiff suffered from several severe impairments, however, the ALJ did not err by failing to conclude at step two that Plaintiff's scoliosis constituted a severe impairment.  Indeed, step two operates as a threshold inquiry.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*).  At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921.  A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work.  *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*).  "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not

5

simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. § 416.921.

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the thoracic and lumbar spine; cardiac dysrhythmia; fibromyalgia; and status post right knee arthroscopy (Tr. 27). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853-54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

Notwithstanding, Plaintiff failed to demonstrate any limitations she experienced as a result of her scoliosis. Instead, she relies upon limitations that an individual *may* suffer from scoliosis but does not argue that she in fact experiences any of those limitations. Essentially, she relies solely upon her diagnosis of scoliosis in arguing that she experienced disabling limitations from that impairment. As the Commissioner contends, however, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (citations omitted). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Furthermore, as noted above, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter*, 791 F.2d at 1547.

Here, the only medical record Plaintiff points to in support of her purported limitations from scoliosis indicates that Plaintiff complained of mild-to-moderate back pain to Dr. Jose Briceno in the emergency room on December 20, 2014 (Tr. 628). Dr. Briceno indicated that Plaintiff did not currently experience any symptoms or other pain at that time, however (Tr. 628). Upon examination, the only abnormalities noted were the existence of a noticeable scoliosis, approximately 58 degrees apex to the right, and a right rib raise (Tr. 629). Otherwise, Dr. Briceno concluded that all other results were normal, including 5/5 bilateral hip flexion, knee extension, knee flexion, ankle dorsiflexion, plantar flexion, and great toe extension; sensation intact to light touch; no clonus; no hyperreflexia; and negative Babinski (Tr. 629). Dr. Briceno determined that Plaintiff's scoliosis was not the major contributing cause of her tachycardia, although pain in her back stemming from scoliosis could contribute to tachycardia

to some degree (Tr. 629-30).  Dr. Briceno noted that scoliosis more than 90 degrees could cause symptoms related to restrictive lung disease, but Plaintiff only registered at 58 degrees at that time (Tr. 629).

Outside of these notes, Plaintiff failed to point to any other evidence indicating that she suffered limitations as a result of or otherwise attributable to her scoliosis.  Indeed, although a treatment note from an emergency room suggested scoliosis may have caused Plaintiff's chest pain in that instance, such a finding was not conclusive, and the X-ray of the lumbar spine and thoracic spine showed some degenerative disc disease, but no procedures or interventions were suggested (Tr. 763-64).  Given the lack of evidence supporting any limitations, Plaintiff failed to demonstrate that her scoliosis was a severe impairment.  Accordingly, the ALJ did not err at step two of the sequential analysis in failing to conclude that Plaintiff's scoliosis constituted a severe impairment.

**B.      Subjective Complaints**

Plaintiff next asserts that the ALJ failed to properly consider Plaintiff's subjective complaints regarding her cardiac symptoms.  In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 416.929.  In social security disability cases, evaluation of a claimant's subjective complaints fall within the province of the ALJ. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921

F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 416.929.  Once the claimant establishes an underlying physical or mental impairment that could reasonably be expected to produce the his or her pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to perform basic work activities.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).[2]  When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote,* 67 F.3d at 1562 (citation omitted).

As noted above, in considering Plaintiff's subjective complaints, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible (Tr. 30).  Specifically, in considering Plaintiff's cardiac impairment, the ALJ acknowledged Plaintiff's prior cardiac ablation for atrial fibrillation in 2012 and her reported intermittent chest pain with shortness of breath and palpitations (Tr. 31).  In finding Plaintiff's subjective complaints not fully supported by the evidence of record, the ALJ relied upon evidence indicating routine physical examinations and emergency room visits, EKGs with normal results, a negative stress test, X-rays with normal results, a finding by a physician that Plaintiff's chest pain was not attributable to an underlying cardiac cause, and an ability to engage in adequate, routine activities of daily living that

---

[2] Effective March 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016), which was later republished in October 2017, 2017 WL 5180304 (S.S.A. Oct. 25, 2017), to eliminate the term "credibility" from the agency's policy.  Since the ALJ rendered his decision on October 26, 2015, SSR 96-7p is applicable.

correspond to the RFC for a reduced range of sedentary work (Tr. 31). Although, as Plaintiff notes, Plaintiff experienced tachycardia, extra systoles, and other issues during the relevant period, such diagnoses do not indicate the intensity, persistence, or limiting effects associated with such symptoms or how they limit Plaintiff's ability to perform basic work activities. *See* SSR 96-7p. As the Commissioner argues, and as already noted, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes*, 936 F.2d at 1218. As stated above, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis*, 153 F. App'x at 572. Again, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter*, 791 F.2d at 1547. Plaintiff failed to provide support for her allegedly disabling symptoms or otherwise demonstrate that she was disabled.

For example, Plaintiff points to a finding of sinus tachycardia, with a heart rate of 109, at a September 2013 appointment with Dr. Akella (Tr. 467). Plaintiff fails, however, to acknowledge that, at that same appointment, Plaintiff denied chest pain, dyspnea, syncope, palpitations, bilateral lower extremity edema, fatigue, tingling or numbness, or muscular weakness (Tr. 467-68). Upon examination, Dr. Akella noted that Plaintiff was in no acute distress, with unlabored breathing, normal PMI, no cardiac thrill, regular heartrate and rhythm, no murmurs, normal pulses bilaterally in the carotid arteries, normal aortic pulse without bruits, femoral pulses 2+ bilaterally with no bruits, pedal pulses 2+ bilaterally, and no edema or varicosities present in the extremities (Tr. 469).

Likewise, Plaintiff points to the February 2014 treatment note from Dr. Akella, asserting that a rapid heart rate was present and the EKG was abnormal at that time (Tr. 853, 856).

Plaintiff again fails to note that, as with the September 2013 treatment note, Dr. Akella reported normal findings, including that the EKG taken that day was within normal limits (Tr. 854). Specifically, despite Plaintiff's complaints of fatigue and shortness of breath, Plaintiff denied chest pain, dyspnea, syncope, palpitations, bilateral lower extremity edema, fatigue, lightheadedness, orthopnea, claudication, tingling, numbness, or muscular weakness (Tr. 854-55). Dr. Akella examined Plaintiff, and, although a rapid heart rate was present, he found that Plaintiff was in no acute distress, with unlabored breathing, normal PMI, no cardiac thrill, normal heart rhythm, no murmurs, normal pulses bilaterally in the carotid arteries, normal aortic pulse without bruits, femoral pulses 2+ bilaterally with no bruits present, pulses 2+ bilaterally, and no edema or varicosities present in the extremities (Tr. 856).

Plaintiff appears to simply rely upon the diagnoses of tachycardia and other issues as a basis for the ALJ to find that her subjective complaints of disabling limitations were accurate and to find that Plaintiff was disabled based on those complaints. As explained above, such reliance is misplaced, as diagnosis alone cannot establish disability. Furthermore, as the September 2013 and February 2014 treatment notes from Dr. Akella indicate, although tachycardia was present, Plaintiff experienced no disabling limitations or even any other symptoms associated with the elevated heartrate (Tr. 467-69, 854-56). And, these are just two examples, as suggested by Plaintiff. As the ALJ discussed in the decision (Tr. 31), despite Plaintiff's subjective complaints and despite varying diagnoses, the record is replete with such benign and normal findings, which support the ALJ's finding that Plaintiff's subjective complaints did not comport with the evidence of record. Given the ALJ's thorough discussion, and the evidence of record indicating that Plaintiff's subjective complaints were not as severe as alleged and thus were not disabling, the ALJ properly determined that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of her symptoms were not supported by the evidence. Substantial evidence supports the decision in that regard.

### C.      Medical Opinions

Finally, Plaintiff argues that the ALJ failed to properly assess the weight afforded to the opinions of two physicians. Namely, in two cursory paragraphs, Plaintiff argues that the ALJ failed to assess the weight afforded to Dr. Akella and afforded the improper weight to the opinion of Dr. Morford. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. § 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. § 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. § 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232,

1240-41 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

### i.    Dr. Akella

Plaintiff briefly argues that the ALJ failed to assess the weight afforded to Dr. Akella's September 2012 physical capacity evaluation, in which Dr. Akella opines as to Plaintiff's limitations in a work setting at that time (Tr. 448-49).  Indeed, in the decision, the ALJ does not address the weight afforded to Dr. Akella's opinion.  As the Commissioner contends, however, Plaintiff fails to point to anything that requires the ALJ to discuss the weight afforded to an opinion outside of the relevant period and, notably, which was rendered more than a year before the application date or onset date.  Instead, as the Commissioner explains, the ALJ properly considered the evidence of record for the relevant time period in determining Plaintiff's RFC.

Namely, "[f]or SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file."  *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (*per curiam*); *Moore*, 405 F.3d at 1211 (same); *see* 20 C.F.R. §§ 416.330, 416.335.  In this instance, Plaintiff filed her application for SSI on October 10, 2013, and the ALJ rendered his decision on October 26, 2015, making the relevant time period for consideration from October 10, 2013, to October 26, 2015.  *See Moore*, 405 F.3d at 1211 (stating that a claimant's SSI appeal required her to show disability between the date of her SSI application and the ALJ's decision).  As noted, Dr. Akella rendered his opinion more than a year prior to the start of the relevant period.  Plaintiff fails to demonstrate how an opinion on her functionality from more than a year before the first day of the relevant period would change the result reached by the ALJ or why such opinion should have been considered in formulating Plaintiff's RFC.  The opinion was not relevant to the inquiry of whether Plaintiff was disabled

during the period from October 10, 2013, to October 26, 2015, as it did not pertain to Plaintiff's ability function during that time.

As the Commissioner asserts, even if, assuming *arguendo*, the ALJ should have considered Dr. Akella's September 2012 opinion, the evidence from Dr. Akella during the relevant period does not support the limitations set forth in Dr. Akella's September 2012 physical capacity evaluation (Tr. 31, 854-62). Plaintiff sought treatment from Dr. Akella for her cardiac issues. Notably, as of September 2012, Dr. Akella opined that Plaintiff could stand two hours, walk one hour, and sit four hours in an eight-hour workday; occasionally lift or carry less than ten pounds; engage in repetitive simple grasping and handling but not repetitive pushing and pulling, fine manipulation and fingering, or operating foot controls; never bend, kneel, squat, crawl, climb stairs, or climb ladders; and only occasional tolerate stress (Tr. 448-49). During the relevant period, however, Plaintiff reported to Dr. Akella that she was doing well in February 2014 and only complained of fatigue and shortness of breath (Tr. 854). Upon examination, Dr. Akella observed no abnormal findings except the presence of a rapid heart rate (Tr. 855-56). An echocardiogram performed less than a week later demonstrated no abnormalities with respect to the ventricles, atria, or valves of the heart (Tr. 858-59). Following that, Plaintiff returned to Dr. Akella in June 2014, wherein she reported doing well but experiencing palpitations and fatigue (Tr. 860-61). Upon examination, Dr. Akella noted tachycardia was present but otherwise noted all normal findings (Tr. 861-62). Similarly, in August 2014, Dr. Akella noted that Plaintiff reported doing fairly well but complained of episodes of rapid heart rates accompanied by fatigue and shortness of breath, but, upon examination, Plaintiff demonstrated all normal findings (Tr. 880-82). Such findings do not support the more extreme limitations, including manipulative and exertional limitations, set forth by Dr. Akella in September 2012.

Furthermore, as the ALJ discussed, the other evidence of record did not demonstrate that Plaintiff was limited beyond those limitations set forth by the ALJ in the RFC finding. The ALJ correctly noted that, following Plaintiff's atrial fibrillation in 2012, although Plaintiff reported intermittent chest pain with shortness of breath and palpations, Plaintiff's "physical examinations, during both routine examinations and emergency room visits, divulged no murmur, no edema, and an otherwise regular heart rate rhythm; EKGs also consistently revealed normal sinus rhythm and ejection fraction of 65 percent" (*see, e.g.,* Tr. 31, 764, 769, 786-88, 831, 982). Additionally, chest X-rays conducted in November 2014 indicated clear lungs, normal heart size, and no alveolar infiltrates or effusions (Tr. 706-07), followed by a January 2015 stress test that was negative for ischemia and confirmed normal left ventricular systolic function (Tr. 31, 982). Further, in September 2014, when questioned as to her ability to perform activities of daily living, Plaintiff reported to Dr. Steven Greenfield that she was capable of bathing herself, dressing herself, feeding herself, getting in and out of bed herself, getting in and out of chairs herself, using the toilet by herself, walking by herself, making her own meals, and doing her own shopping and, in fact, did not indicate she was limited in any way as to her activities of daily living, statements which she repeated to Dr. Naveen Acharya in June 2015 (Tr. 31, 639, 984). During a hospital visit in April 2015, after complaints of chest pain, Plaintiff underwent selective right and left cholangiography and left heart catheterization with left ventriculography, which indicated no significant obstructive coronary artery disease and possible non-cardiac cause of chest pain (Tr. 826-27). Accordingly, though Plaintiff complained of chest pain, fatigue, and tachycardia as a result of her cardiac impairment during the relevant period, the evidence of record did not support the limitations Dr. Akella opined would stem from Plaintiff's cardiac impairment. Given the foregoing, therefore, the ALJ did

not err in failing to consider or assess the weight afforded to Dr. Akella's September 2012 opinion.

### ii.      Dr. Morford

In another single-paragraph argument, Plaintiff contends that the ALJ erred in affording great weight to the opinion of Dr. Morford, a state agency medical consultant (Tr. 32, 132-36). Essentially, Plaintiff contends that the ALJ should not have afforded great weight to the opinion of Dr. Morford because Dr. Morford's opinion did not include review of the medical records that came in subsequent to the issuance of his opinion.  Plaintiff's argument lacks merit.

Dr. Morford rendered his opinion on January 31, 2014, which was within the relevant time period but before some of the medical records were produced.  In his opinion, Dr. Morford opined that, for the period from November 2013 through January 2014, Plaintiff maintained the ability to perform a reduced range of sedentary work (Tr. 132-36).  Namely, Dr. Morford opined that Plaintiff maintained the ability to frequently lift or carry ten pounds; could stand or walk a total of four hours in an eight-hour workday; could sit about six hours in an eight-hour workday; was unlimited as to pushing and pulling; could frequently balance but only occasionally stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds; could have unlimited exposure to noise, vibration, fumes, odors, dusts, gases, and poor ventilation but must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, or hazards, such as machinery or heights; and experienced no manipulative, visual, or communicative limitations (Tr. 132-33).  In doing so, Dr. Morford detailed the extensive evidence of record he reviewed in providing the basis for his opinion (Tr. 134).  Given that Dr. Morford provided the basis for his opinion and that his opinion comported with the evidence of record, the ALJ properly afforded Dr. Morford's opinion great weight, despite the fact that Dr. Morford did not review all of the evidence of record.

Indeed, as an initial matter, state agency medical consultants such as Dr. Morford are considered experts in the Social Security disability evaluation process. 20 C.F.R. § 416.927(e)(2)(i). When considering the weight to afford state agency medical consultants, SSR 96-6p provides:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. …
>
> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996). In his decision, the ALJ explained that he afforded the opinion of Dr. Morford great weight because it was consistent with the record as a whole, and, specifically, the finding that Plaintiff maintained the ability to perform a range of sedentary work comported "with the neurological and musculoskeletal examinations throughout the disability period showing intact strength, range of motion, exercise tolerance, and heart rhythm, as well as the claimant's statements regarding her ability to dress, bathe, shop, and work part-time" (Tr. 32). As discussed more fully in the ALJ's decision, the evidence of record supported the finding that Plaintiff maintained the ability to perform a reduced range of sedentary work, as Dr. Morford opined. Given that Dr. Morford's opinion was supported by the evidence of record, the ALJ properly afforded the decision great weight. *See* SSR 96-6p.

Furthermore, in rendering the RFC, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record. 20 C.F.R. §§ 416.920(e), 416.945(a)(2) & (e); *see Jamison*, 814 F.2d at 588 (stating that the "ALJ must consider the applicant's medical

condition taken as a whole"). Even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion or offering a RFC assessment, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony). Here, the ALJ thoroughly considered all of the evidence of record in determining Plaintiff's RFC, including records produced after Dr. Morford rendered his opinion (Tr. 26-34). As the ALJ discussed at length, the evidence of record, including evidence produced before Dr. Morford rendered his opinion, Dr. Morford's opinion, and evidence produced after Dr. Morford rendered his opinion, supports a finding that Plaintiff retained the RFC to perform a reduced range of sedentary work. Accordingly, the ALJ did not err in affording great weight to the opinion of Dr. Morford.

## IV.

Accordingly, after due consideration and for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be affirmed.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 12th day of February, 2018.

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

cc:     Hon. James D. Whittemore
        Counsel of Record